Dorothy BRUNNER, Administratrix of the Estate of Leonard J. Brunner, deceased, and Dorothy Brunner, Plaintiff,

v.

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY, a Minnesota corporation, Defendant.
No. 5706.

United States District Court
E. D. Wisconsin.
March 20, 1956.

John C. Whitney, Green Bay, Wis., and Patrick A. Dewane, Manitowoc, Wis., for plaintiff.

Reginald Nelson, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action for wrongful death as a result of a railroad crossing accident. The Court submitted the case to the jury. The jury found causal negligence on the part of the train crew with respect to management and control only. It found causal negligence on the part of the deceased only with respect to stopping his vehicle in a position so close to the railroad tracks that the vehicle was not clear of a train passing over the crossing. On the question of comparative negligence, it apportioned sixty percent to the train crew and forty percent to the deceased. The accident happened on the 8th day of December, 1950, at about 3:05 p. m. The deceased was working for Manitowoc County operating a snow plow on Highway 151. The railroad equipment involved was a snow plow. The Court denied a motion for directed verdict at the close of the testimony without prejudice for the reason that the testimony was all in and it was the Court's desire that there be a complete record.

 It is elementary that in passing on the motion for directed verdict and motions after verdict that the Court must view the evidence and all inferences which could be drawn from the evidence in the light most favorable to plaintiff's contentions. It is also ele-

mentary that this case being in this court because of diversity of citizenship, the Court is bound by the substantive law of the state of Wisconsin with reference to questions of liability.

We have here a railroad crossing at which the deceased's visibility was excellent. From a point fifty feet from the crossing deceased had a clear view of the tracks for a distance of 1200 feet. At a point seventy-five feet from the crossing, there was a clear view of the tracks for a distance of 927 feet. From a point one hundred feet from the crossing there was a clear view of the tracks for a distance of 866 feet. (Defendant's Exhibit 15)

While the evidence shows that in general on the day of the accident there were snow flurries in various places and drifting snow, the testimony of the train crew, of the witness Henry Kirchoff, and of Mrs. Halverson indicated that the visibility at the time and place of the actual accident and immediately prior thereto was not such as to be any serious handicap to the deceased or the train crew. The visibility was the same for the deceased as for the train crew. The crossing was plainly marked. There is no showing that the deceased was not thoroughly familiar with the crossing. He was an experienced operator of the equipment in question. He must have, from the nature of his work, been well acquainted with the road in question.

Deceased was operating an awkward piece of equipment. He sat twenty feet back from the front end. The testimony of Ray Habermann, highway superintendent, was to the effect that it was customary to stop at railroad crossings for the purpose of raising the plow and raising the wing blades; that this operation could have been done at one time; that the levers are within easy reaching distance; and that it was customary in operating this equipment to look out for trains. There is no showing that there was any requirement in the operation of the snow plow that the plow and the wings be raised at a time when the equipment was on the track or encroaching on the right of way.

Plaintiff urges that the fact that the train was a non-scheduled train released the deceased from the degree of care which, under the Wisconsin decisions, a traveler is ordinarily required to use and exercise at railroad crossings. No authority has been cited in Wisconsin for such a position. The train in the case of Roswell v. Chicago, M., St. P. & P. R. Co., 240 Wis. 507, 2 N.W.2d 215, also carried a snow plow and equipment described in the opinion as quite similar to that involved in this case. While the opinion does not state in so many words that it was a non-scheduled train, there is no statement that it was a scheduled train. Snow plowing equipment cannot of its very nature be scheduled in advance unless and until there are more accurate weather predictions available than there are now. The Wisconsin Supreme Court in that case in 1942 treated this train the same as it had treated scheduled trains in its other decisions.

Plaintiff argues that this case differs from other railroad crossing cases in that the jury found causal negligence on the part of the deceased in stopping too close to the track; that the jury could have believed that this stop was made when the train was over one thousand feet away from the crossing, and that this should have put the train crew on notice that danger impended causing it to take affirmative action before it did take such action. The Court is required to apply the comparative negligence law as interpreted by the Wisconsin Supreme Court. Under those decisions, is a jury permitted to say that a train crew is guilty of more negligence in not discovering, some six hundred or more feet away from a crossing, that a snow plow was in a dangerous position than is the operator of the plow who had it under his own control and who was seated twenty feet from the front end of the plow? This negligence (and this is the only causal negligence found by the jury) is, in the Court's opinion, of

the same type on the part of both. Regardless of the difference in phraseology of the determinative questions, they each basically inquired as to the conduct of one party or the other with reference to highway equipment having been stopped too close to the track. The deceased was in much better position to see and observe what he was doing, to judge the distance that the front end of the plow was from the track, than was the train crew, who at six hundred feet would be thirty times as far away from the crucial point of observation and judgment than was the deceased. At three miles an hour the deceased had plenty of time when the train was one thousand feet away and undoubtedly still had time when it was six hundred feet away to back up the equipment or even to proceed and cross the tracks. He was in a much better position to observe just where the front end of his equipment was than was the train crew. The train crew under the Wisconsin decisions had a right to assume when they saw him close to the tracks that he would take some effective action to remove the equipment from a point of danger. When it became apparent that he was not going to do so and was in danger, it was too late. The jury found causal negligence on the part of the train crew undoubtedly because it did not make such discovery earlier. The Court feels that under the Wisconsin decisions it must be held as a matter of law that his causal negligence was at least as great as that of the train crew.

■■ Plaintiff's counsel argues that in considering the comparative negligence question the jury could consider the negligence that it found on the part of the train crew with reference to the whistle, the bell, and maintaining communication between the snow plow and the engine. In answer to Question No. 2 the jury held that none of those three was an efficient cause of the accident. The comparative negligence question following the statute calls for a comparison of the *causal* negligence. Negligence that was non-causal could not properly enter into the comparative negligence question. The Court feels that the answers of the jury to subdivisions (b), (c) and (d) of Question No. 2 of the special verdict are well supported by the evidence and within the province of the jury. Therefore, the jury could not properly consider its findings as to subdivisions (b), (c) and (d) of Question No. 1 on the comparative negligence question.

The jury found causal negligence on the part of the train crew only with respect to management and control. There is considerable question in the Court's mind as to whether under the Roswell case, supra, such finding could stand. Regardless of that question, it is the Court's opinion that under the decision of the Wisconsin Supreme Court in Ligman v. Bitker, 270 Wis. 556, 72 N.W.2d 340 (October, 1955), and practically all comparable preceding railroad crossing cases, that the Court must hold as a matter of law that the deceased was guilty of at least as much causal negligence as was the train crew. This bars recovery under the Wisconsin law. The Court, therefore, believes that it should have granted and does hereby grant the motion of the defendant for directed verdict.

Defendant's counsel may prepare an order for judgment in accord herewith.